## Ottoman Cahvey Co., Plff. in Err., *v.* City of Philadelphia.[1]

An appropriation for the purchase of "tea, coffee, rice, sugar, and molasses," for the use of an almshouse,—*Held*, not to authorize the purchase of an article of manufacture known as "Ottoman Cahvey" as a substitute for coffee.

(Decided February 8, 1886.)

Error to the Common Pleas, No. 2, of Philadelphia County to review a judgment for defendant in an action for goods sold and delivered. Affirmed.

This action was brought by the Ottoman Cahvey Company against the city of Philadelphia, to recover for goods purchased by and delivered to the board of guardians of the poor of the city. The case was referred to a referee, who found as follows:

[1] NOTE.—The departments of the city of Philadelphia have no power to bind the the municipality except for the matter authorized to be purchased

That on February 25, 1881, the plaintiffs sold and delivered to the defendant 50 barrels of Ottoman cahvey, for $2,979.98. That subsequently to that date, to wit, in the year 1881, there were payments made to plaintiffs, to be applied on account of that bill, to the amount of $1,220.19. That among the appropriations for the year 1881, to the guardians of the poor, was item 17, "For tea, coffee, rice, sugar, and molasses, $33,000." That the board of guardians, in pursuance of said appropriation, advertised for proposals for Ottoman cahvey; they also advertised for coffee, and made awards for coffee.

The cahvey being a substance partly composed of coffee, was used for mixing with the coffee. The guardians advertised for, bought, and used cahvey for the same purpose in previous years. On January 7, 1881, a schedule of bids for supplies was presented to the guardians of the poor, and opened in the presence of the proper committee of the Philadelphia city councils. Among these bids was that of A. H. Adams, president of the company plaintiff. His proposal was dated January 4, 1881, and was for Ottoman cahvey. A contract for 50 barrels of Ottoman cahvey was awarded to A. H. Adams, and the award approved by the proper committee of councils. At the end of the year 1881 item 17 of the appropriation was not entirely exhausted. The defendant offered no evidence of payment.

To the report exceptions were filed by the city, upon the ground that there was no law or ordinance authorizing the purchase of Ottoman cahvey, and no appropriation was made to pay for the same. The report and the exceptions were referred back to the referee, who made a supplemental report to the effect that Ottoman cahvey is composed partly of pure coffee and partly of other substances, which, as is claimed, improve it for drinking, and give it additional strength; that it is in such use as to make

---

or thing to be done, and at no greater expenditure than what an appropriation has been made to pay for. Parker v. Philadelphia, 92 Pa. 401. Mathews v. Philadelphia, 93 Pa. 147. But an unauthorized act assumed done for the benefit of the municipality may be adopted and the debt contracted by reason thereof assumed. Silsby Mfg. Co. v. Allentown, 153 Pa. 319, 26 Atl. 646; McCormick's Appeal, 165 Pa. 386, 44 Am. St. Rep. 671, 30 Atl. 986; Childs's Appeal, 179 Pa. 634, 36 Atl. 354; Chester v. Eyre, 181 Pa. 642, 37 Atl. 837.

As to purposes for which public money may be appropriated or raised by taxation, see editorial note to Baggett v. Colgan, 14 L. R. A. 477.

it recognizable as a kind of coffee that may be mixed with pure coffee to produce the beverage which goes under that name. He also stated arguments in support of the conclusions reached in his report.

Upon the referee's report the court below filed the following opinion:

HARE, P. J.: In the year 1881, councils made an appropriation to the board of guardians of the poor for the purchase "of tea, coffee, rice, sugar, and molasses." Instead of pursuing the authority thus conferred, the board of guardians bought "Ottoman cahvey," an article which, so far as we can gather from the evidence and the report made by the referee, is a mixture of various substances, including a certain quantity of coffee. What the other ingredients are, and what proportion they bear to the coffee, the report does not inform us; but we learn that the adulteration, regarded as such, would exceed the latitude permissible in trade, and it is frankly conceded that "cahvey" is not the fruit of the coffee tree, but a new invention or combination intended as a substitute, and which could not be sold as coffee without fraud. The plaintiffs were guilty of no such deception, but offered the article openly as cahvey, and it was so received and paid for, but this, although a proof of fairness, would seem to be conclusive that they are not entitled to maintain the present suit. If the statutes which regulate the proceedings of councils and require that appropriations shall be itemized mean anything, they mean that the money appropriated for the purchase of one article shall not be used to buy another of a different kind, and that if this rule be not followed the contract shall be invalid. It is immaterial that the substituted article is better than that prescribed, that it will answer the same purpose, or that it can be bought at a lower price; the question remains, Is it identical? And, if that must be answered in the negative, there is a plain excess of power, and the seller cannot recover.

Unquestionably, identity in such cases depends on the common use of language as employed in trade; and commodities which pass in commerce under the same name may be regarded as identical, although adulterated, or containing ingredients which are chemically or botanically different; and if the referee had found in this instance, on sufficient grounds, that cahvey was coffee or sold as such by dealers in the fair and ordinary course

of business, we should have acquiesced in his decision.    He has not found this, but something entirely different; that one beverage is frequently substituted for the other in hotels, restaurants, and private families; that some persons deem it preferable; and that it is not only good enough for the inmates of an almshouse, but preferred by some consumers whose position enables them to choose.    Such considerations might have had much weight if urged when the appropriation was before councils, or subsequently when the question arose whether the plaintiff should be paid; but they are foreign to the point presented by this suit.    Is cahvey the commodity which the board of guardians was authorized to buy?

The relation of the various departments of the city government is one of agency defined by statute, and all persons who deal with them are bound to take notice of the measure of their authority, and that every act or contract that exceeds it is invalid.    Either the instructions given by councils for the expenditure of the money appropriated for municipal purposes must be followed, or they may be disobeyed.    They certainly have not been observed in the present instance; and, if the departure from them be sanctioned, for the reasons assigned by the plaintiff, a regulation which was meant to be imperative may be disregarded with impunity whenever the jury or referee to whom the case is submitted are of opinion that the variance is trivial, and not attended with injurious consequences.

It is, indeed, contended on the plaintiff's behalf, and found by the referee, that what is meant by the appropriation is coffee as a beverage for the use of the almshouse, and that the board of guardians consequently had a discretion as to the materials of which it should be made, and might procure any ingredients that would produce a drink resembling coffee in taste, color, and smell.    Burnt rye is, as the referee informs us, used economically by some persons for that end, and therefore the guardians might have regaled the inmates of the almshouse with a decoction of burnt rye, or they might have substituted chicory or, as we may infer, roasted beans or peas.    Had a sum certain been appropriated to supply the almshouse poor with breakfast, including tea and coffee, it might have been argued with some plausibility that what councils had in view was the beverage, and not the leaf or berry from which it was prepared.    Such is not the language of the appropriation, which, on the contrary, specifies

the articles themselves, "rice, coffee, sugar," etc., without reference to what might be made out of them by the culinary art. The case is not one for nice distinctions, but for a straightforward application of statutes that were intended to secure three things: That councils shall determine how much is to be expended in each year, the use to which the money shall be put, and accuracy and good faith in accounting; each equally material for the protection of the taxpayer, and to prevent extravagance and malversation.   It does not follow that councils must descend in all cases to such minute itemization as was practised here, and provide that one kind of food shall be purchased instead of another; but if they do they must be presumed to have some good reason, and their behest should be obeyed.

It is also said that the bids and contracts for the articles purchased by the guardians, including cahvey, were read and awarded in the presence of a committee of councils and approved by them, and that their sanction operated as a ratification even if there was no previous command.   We are, however, of the opinion that the object of the legislature in requiring the presence of the committee was supervision, to secure the observance of the course prescribed by councils, and not to open a loophole for evasion.   The duty of the committee was to see that the path marked out by law was followed, and they could no more direct the guardians to substitute cahvey for coffee, than they could have authorized the purchase of chocolate or any other article not specified in the appropriation.

If, as we were told with much earnestness and feeling during the argument, the view above taken will prevent the collection of money which is honestly due, it is a cause for regret, but cannot justify the disregard of a rule made for a beneficial end, in which the citizens of Philadelphia are deeply interested.   The responsibility of determining whether the city has received value and should satisfy the plaintiff's demand, aside from contract, rests with councils.   The question before us is purely legal, and we think the law is with the defendant.

Judgment having been entered for defendant, plaintiff brought error.

*J. W. Patton,* for plaintiff in error.—Under a statute authorizing cities and towns to lay out lots as "gravel and clay pits," and the taking therefrom of "earth and gravel necessary to be

used in the construction, repair, or improvement of the streets and ways;" held, that any earth, gravel, or stones, suitable for the purpose, and capable of being dug out of the ground and removed by ordinary excavation, might be taken.     Hatch v. Hawkes, 126 Mass. 178.

Meaning of "householder" in cases of nonresidents.     King v. Hall, 1 Barn. & C. 126.

"Pigs" held to be "cattle."     First Nat. Bank v. Home Sav. Bank, 21 Wall. 294, 22 L. ed. 560.

A statute made it capital to set fire to a "stack of pulse." Held, that it was sufficient to state in the indictment that the prisoner set fire to a "stack of beans."     2 Eng. Cr. Cas. 323.

"Laying out" means "opening."     Re 28th Street, 102 Pa. 146.

"Owner" means "occupier."     Schott v. Harvey, 105 Pa. 222, 51 Am. Rep. 201.

*Charles B. McMichael* and *Charles F. Warwick,* for defendant in error.—A contract by the receiver of taxes for the advertising of delinquent taxpayers in a third newspaper when councils have restricted the number to two, is not binding on the city. Philadelphia v. Flanigen, 47 Pa. 26.

A contract made by a department without the authority of an ordinance is void, not only as to the city, but as to others.   Greer v. City, 29 Phila. Leg. Int. 52.

While the board of comptrollers of public schools have authority to employ teachers and fix their salaries, this can only be done in subordination to the appropriating power of councils.   Philadelphia v. Johnson, 47 Pa. 382.

So with the board of health.     Bladen v. Philadelphia, 60 Pa. 464.   See Hubbs v. City, 6 Phila. 550.

While there is an appropriation of a specific sum, and without specific authority from councils, a contract is made by the highway department for a larger sum, there can be no recovery beyond the amount of the appropriation.     Continental Bridge Co. v. Philadelphia, 34 Phila. Leg. Int. 114.

Per Curiam:

The opinion of the learned judge in disposing of the exceptions to the report of the referee fully justifies the conclusion at which the court arrived, and on that opinion the judgment is affirmed.